If it pleases the Court, my name is Mike Schabelsky for the Appellant's Employer Solutions. There is a coherent text-based reason why a right of contribution exists here. Let me explain. The text is the Secretary's Regulation 29 CFR, Section 791.2. That regulation interprets Section 207 of the Fair Labor Standards Act to make co-employers jointly and severally liable for violations of Section 207. But the test for whether there is a right of action is whether Congress intended it. So should we rely on the regulation?  Should we determine whether the regulation permissibly or accurately describes the statute? How do we deal with that? You should rely on the regulation here, Your Honors, because Congress delegated the power to the Secretary to interpret and administer the Act. So the Secretary's exercise of that delegation authority is consistent with congressional intent. And here there has been no contention by anyone, certainly the Secretary is not going to make this contention, that the regulation is ultra-virus or otherwise impermissible. So the regulation provides for joint and several liability, correct? Yes, sir. It doesn't speak about contribution? It does not in those words, Your Honor. But as many courts have recognized, including, for example, the District Court of Massachusetts in Walter v. Shuffling, the right of contribution inheres in joint and several liability. You know, that wasn't true in Arizona. That wasn't true in Arizona before we adopted comparative fault. When there was joint and several liability, you could collect from whomever you wanted, and you didn't have a right of contribution until the statutes provided it. Was there a common law right of contribution for joint and several liability? Yes. It changed over time. Yes. In the broad strokes that if you go back to maybe 1800, the common law allowed contribution among non-intentional wrongdoers but didn't allow it for intentional wrongdoers. When this act was adopted, what was the state of the common law with respect to contribution among joint and several tortfeasors? When the statute was enacted in, I believe, the 30s, I can't remember the exact year, the trend was then developing back to allow contribution, and certainly over the ensuing almost century, it is now uniformly recognized.  Congress intended, and I'm assuming that the agency read it correctly, that joint and several liability is what Congress intended, that Congress also intended contribution, although contribution was not the norm when the time the act was adopted. I think, Your Honor, more nuanced what I'm saying is that Congress left it to the Secretary to interpret the act, and the Secretary has consistently interpreted the act, including in renewals of this regulation, I think the most recent code of federal regulation cited from 2018, has consistently maintained the right of joint, the obligation of joint and several liability. Is there any other regulation that defines joint and several liability the way you would like to, that is to encompass a right of contribution, and is there any circuit that has disagreed,  is there any circuit that has disagreed with the Second Circuit's analysis in Herman? Right. I don't believe there's any other regulation under the FLSA that would bear on this, Your Honor, and no, no other circuit court has disagreed with the Second Circuit, but no other court has addressed the issue. Well, they cite some older cases from the Fifth and the Tenth, and I forget the other case they cite, but they have cited earlier cases that talk about no contribution. And I'm glad you mentioned those, Your Honor, because they are fundamentally different here. Those three other circuit court cases from the Fourth, Fifth, and Tenth did not involve contribution claims between co-employers. In each of those cases, the employer had sought contribution against the complaining employee. So, but Herman is on point, is it not? That was a claim for contribution between co-employers, but it didn't address the regulation, Your Honor, and with respect to the Second Circuit, I think it was a fairly cursory drive-by comment that there was no right contribution. Well, it wasn't really. It's two or three pages worth of explanation from somewhat of a flowery writer who starts with the Battle of Waterloo. So I don't know if I, regardless, there is an analysis. It starts with a Supreme Court case and explains their way through, and I know you don't agree with it, but why is it wrong? It's wrong, Your Honor, because of two reasons. One, it doesn't consider the import of the regulation. And secondly, it also misunderstands the Supreme Court's opinion in Northwest Airlines. That case, too, was not a claim for contribution between co-employers. It was a claim for contribution between a union and an employer. And the Supreme Court noted there that there was no right joint in several liability there, and, of course, this regulation wouldn't apply to that situation. But I think what's more important from the Northwest opinions is the Supreme Court's recognition that a right of contribution is not inequitable to require one to bear all the costs, and I quote from the opinion that it would be sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability. So the Supreme Court in Northwest Airlines fully recognized that a right to contribution is not adverse to the purposes of the FLSA and, indeed, would further those purposes. But in that particular case, when the contribution is between employer and a union, there is no joint liability under the act or under this regulation that doesn't apply to them. So we have a statute. Put aside the reg for a second. We have a statute that's silent on the right of contribution, correct? Correct, Your Honor. And it might be a good policy to have contribution, the Supreme Court says, but the Supreme Court always tells us not to impose our policy preferences into statutes. What other basis do we have other than the regulation for reading contribution into the statute? I think it's the regulation, Your Honor, supported by the fact that Congress has delegated implementation and interpretation and administration of this act to the Secretary. So I understand your argument on the regulation. It's by adopting joint and several liability the agency has, in effect, adopted contribution. Yes, sir. That's exactly it. And if I might take a moment to address the question of willfulness, Your Honor. This Court has long cautioned against grants of summary judgment on questions of willfulness because they involve fact questions such as intent and motive. And that is the case here. The Secretary does not contend and never has that Employer Solutions intentionally violated the act. Instead, it was reckless. You should refer that from the record. Now, the Secretary does not dispute, and this is consistent with the broad overview of the law, amongst the district courts where denials of summary judgment are obviously going to be decided, that an employer's reliance on a knowledgeable third party to make the FLSA determinations, like an employee's entitlement to overtime or exemption from overtime. That's not the situation, though, because the person to whom your client delegated this responsibility knew full well that it should have been different and for some reason was cowed into submission perhaps by the third party insisting that overtime hours should not be paid at an overtime rate. No, Your Honor, I respectfully disagree because the undisputed summary judgment record here is that the Employer Solutions employee did not have a contrary belief that these employees were entitled to overtime. Yes, she knew some of them were working more than 40 hours per week, but the undisputed summary judgment record is she believed that they were entitled, they were subject to an exemption that the two other employers, Sink Staffing and TBG, who had the frontline knowledge about what the employees were doing, and in the case of Sink Staffing had the contractual obligation responsibility to make the determinations, had determined that whether or not the employees were subject. It's absolutely clear this employee knew nothing different. If you wish to save any rebuttal time, you're down to a little over a minute. I do, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Caitlin Poe for the Secretary of Labor. Can you speak a little louder, please? Of course, I'll do that. So there is no right to contribution or indemnification under the FLSA. As the Court has recognized, the question where Congress acts and the liability of the defendant is statutory. The question is, what did Congress intend? And in Northwest Airlines, in Texas Industries, the Supreme Court recognized even if a right to contribution, if all the elements are satisfied, even if the policy considerations weigh in favor of recognizing a right. In Texas Industries, they even countered a similar argument that a common law right to contribution is recognized, so it should be recognized under that framework. The Court explained that none of those considerations can compel over whether the right in fact exists, whether Congress has provided for that right. And that's the framework and analysis that Northwest Airlines and Texas Industries, and as applied by this Court in a couple of decisions, looks at whether there's an implied right under the statute or, in the absence, whether it would be appropriate for the Court to formulate a remedy under the common law. And so looking at Congress's intent for the reasons outlined in the Second Circuit's well-reasoned decision in Herman v. RSR, there is no right implied under the Act, and the District Court appropriately considered whether to formulate, whether a common law remedy would be appropriate under its authority to formulate common law, and declined to do so. I'd also like to address the question of joint and several liability and the Department's regulation. First, I'll note that ESSG did not argue in its briefs that the Department's regulation on joint and several liability codifies or recognizes a right to contribution. But second, the Supreme Court in this Court, in Mortgages, Inc., recognized that joint and several liability does not itself equal contribution. It simply illustrates the scope of the remedies that Congress itself provided. And the question that ‑‑ It's possible to have a regime of joint and several liability without contribution. Yes, and that was the case in Northwest Airlines, Texas Industries. Well, it's also the case at some point in common law. Correct. And, you know, in recognizing, as in Texas Industries, the proponents of a right of contribution made a very similar argument, that the states recognized contribution for joint tort feasors, so encouraged the Court to adopt it. And the Court correctly explained that the question must be where the liability is statutory, what did Congress intend. And here there's simply no evidence that Congress intended to provide a right to contribution. Can I ask you a question about willfulness? Yes. Cited at summary judgment? Yes. Plenty of evidence of willfulness. I don't think the other side says there isn't. But the other side says, but the employee says, in my defense, I thought they were entitled not to pay them overtime. For some obscure reason, it doesn't work. Is that enough to get past summary judgment? No, Your Honor. This Court recognizes conduct that is willful includes conduct where, to avoid willfulness, an employer must take affirmative steps to ensure that their paid practice here, that denial of overtime, is in compliance with the Act. And an unexplained, unresearched, unquestioned direction from a client not to pay overtime, where the payroll administrator here recognized she didn't know the work performed, didn't conduct any further inquiry, is simply not sufficient to meet that test. It strikes me as grossly negligent. Is it willful? Well, the willfulness here is kind of born of the actions of the payroll administrator plus ESSG as the employer, their conduct as well. So here ESSG structured its business so that the payroll processing here was delegated solely to one employee, newly hired, newly trained. And they dispute whether she was subject to proper oversight, but it's uncontested that they never once reviewed the payroll in this case for almost two years. So she had no supervision. And as this Court recognizes, granted in some suffering permit decisions in Forrester, an employer can't simply turn its back on you. No, no. That may be negligence. It may be a lot of things. Trying to figure out, let's assume, and that's not this record, that you just have a really bad employee. She just decides arbitrarily when to give overtime and not overtime. Does that make the employers' conduct willful? Where the employer has made her responsible for overtime decisions, her actions and knowledge in that instance would have to be imputed to the employer, yes. So here your opponent says her knowledge, her state of mind was, gee, once the real employer, the people to whom we were sending these people, told me that overtime wasn't needed, I assumed they knew something, and so I just didn't pay it. Does that create a fact question on willfulness? No, Your Honor. I think under this Court. It isn't the standard reckless disregard. Yes. So that equals willfulness. Willfulness includes a reckless disregard. Under Alvarez, right? Harrow. And Flores is particularly helpful, I think, in this context because there was a similar city in that context argued that its HR department and its payroll department made a decision, and the Court explained that an unexplained decision with no inquiry, no follow-up to determine that was the appropriate decision, no explanation of how they arrived there, shows a reckless disregard for whether that determination complies with the Act. And that's exactly, at least as the payroll administrator explains here, there was simply no understanding, no follow-up, no inquiry whatsoever into whether denying overtime was appropriate. And that combined with ESSG's giving her this entire responsibility without checking in, you know, turning its back on this situation, without taking any affirmative action to ensure that these employees were paid appropriately, is at least a reckless disregard. Under our circuit's cases, if we find willfulness, that gives rise to an award of liquidated damages, correct? Correct. Is that a, I'm trying to figure out whether in the rest of the country that was also the law, or are we unique in that respect? I'm not positive, Your Honor. I believe, I couldn't speak to that, what the majority of circuits would conclude. I know that the cases cited by ESSG that would purport to run to the contrary are in the context of the flip side. So where a court has not found willfulness or a jury has not found willfulness, that wouldn't preclude an employer from being able to demonstrate good faith and objective grounds for believing they were complying. But where the fact finder has concluded that the conduct is willful, it's necessarily considered and rejected evidence of good faith. So we believe this court's precedent on that issue is entirely correct. And on willfulness, I would also like to point out, Your Honor, that below and in the briefing, ESSG did not argue that the payroll administrator was relying on the reliable advice of a knowledgeable third party. Instead, they argued it was error for her to follow the client's directive here. They repeatedly stated that that was her mistake, was not to talk to a supervisor. So this argument that it was appropriate and excuses or precludes summary judgment for them to rely on the advice of the client is something that they've repeatedly refuted in the briefing. And on that note, I'll just return to the question of whether a right to contribution or indemnification exists. We believe under the framework applied by the Supreme Court and this court, there is no implied right to contribution. And we do note that ESSG, before the district court, did concede that. They asked the court to recognize a right under the common law. But if this court were to reach it, we believe that for the reasons outlined by the Second Circuit, there's no evidence that Congress intended an additional renewing contribution, particularly in light of the comprehensive remedial scheme that the FLSA does provide. Let me ask you the flip side of the question Judge Graber asked. Is there any case in any circuit or district court that recognizes a right to contribution under the FLSA? I believe there are a couple district court decisions. I don't have the citations at hand. But the overwhelming majority of courts have agreed with the Second Circuit and concluded that there is no right to contribution. At the court of appeals level, there is no case that recognizes the right? Correct. So Herman v. RSR is a leading decision in this point, and we recommend that this court adopt the reasoning. And this court has cited Herman with approval in other FLSA contexts. So we do encourage the court to adopt that conclusion. And if there are no further questions, I will conclude and request that this court affirm the district court's judgment. Thank you. Thank you. And you have about a minute for rebuttal. Your Honors, I want to make sure the record is perfectly clear that Employer Solutions did argue below that it had relied on the other co-employers. If you look at page 33 of our supplemental excerpts of record,  ESSG relied on sync staffing to ensure accurate information was being provided in ESSG's business model. Final approval for payroll was provided by the sales and recruitment agent, in this case, sync staffing. Then statement of fact number 7, which appears on page 34 of the excerpts of record, states that the payroll coordinator, the individual employee at ESSG we're talking about, sent the payroll proof to sync staffing for review and approval to finalize. So this was the argument below. Part of the argument... Judge Miller, go ahead. Thank you. If we conclude that Ms. Holmstock did have the requisite mental state for willfulness, is it your position that that is... I think I understood you saying in your brief that that would not be imputable to her employer because she's not a sufficiently high-level employee? And if that's your position, where does that limitation come from? Sorry, Your Honor. If I could perhaps clarify that argument in this respect, that willfulness for the employer cannot fairly be based on the fact that a single employee maybe didn't conduct a full-blown investigation. Now, if that employee had the requisite state of mind and was willful and was making the decisions, perhaps, but where here the individual employee was reasonably relying, or at least there's sufficient disputes of fact on that, on a third party, the law doesn't require everybody who touches anything along the way in the payroll to independently conduct a full-blown review. This Court has said that willfulness as a matter of law can be found when the employer takes no affirmative action. Well, here the employer did take some affirmative action. It set up a system where two knowledgeable co-employers were reviewing every payroll and making the determination, and our single employee, who had any knowledge about that, understood and relied on them, submitted each payroll for them for approval, and each payroll was approved. She had no contrary knowledge. I understood that the record... Judge Miller, I'm sorry. Did you... Judge Miller has finished his question. I did have one. I understood the record essentially to be that the employee who was making up the payroll sent it to the other employer who said don't pay them overtime. No, sir, Your Honor. If you look at the record, actually, sometimes employees did get overtime. Sometimes they did not. I understand. I understand, but was a reasoned decision? Did somebody say to the lower-level employee, as you term her, there's a good reason not to pay these people overtime? I don't think the summary judgment record shows that the sink staffing gave an explanation. Any reason at all? Any reason at all. So it just said when these people had worked over 40 hours and the software said they should get overtime, and the employee said don't give them overtime. But by the same token, Your Honor, the service... That's sufficient in your view to be a reasonable reliance? Well, reasonable reliance, because they're not asking a stranger on the street. They're asking a company who is knowledgeable about FLSA requirements. Maybe they aren't. Maybe they're not. I think in this context it is, Your Honor, because the secretary never contended that there was no exception that could ever apply to these employees. So we're not dealing with a situation where, as a matter of law, there could never be an exception that applied to any of these people. And so you're not confronted with that situation. But your employee never inquires in this case, is there some particular exception? Is there a reason why this person who worked more than 40 hours this week shouldn't get overtime? This employee relies entirely on the employer, who's got an obvious self-interest, saying don't pay overtime to these employees. Well, I don't know that they do have an obvious self-interest. She did rely on them, yes. She relied on them because her job was just to process the payroll. Thank you, counsel. Thank you. The case just argued is submitted. And we, once again, appreciate helpful arguments from both counsel. We will be in recess for about ten minutes before we hear the last two cases on the docket.
judges: Graber, Hurwitz, Miller